Gus LYKOS et al., Plaintiffs-Appellants,

v.

AMERICAN HOME INSURANCE COM-
PANY, a New York Corporation,
Defendant-Appellee.

No. 78–1977.

United States Court of Appeals,
Seventh Circuit.

Argued April 26, 1979.

Decided Nov. 30, 1979.*

Mathew K. Szygowski, William J. Harte,
Chicago, Ill., for plaintiffs-appellants.

John P. Gorman, James T. Ferrini, Chica-
go, Ill., for defendant-appellee.

Before PELL, Circuit Judge, MOORE,
Senior Circuit Judge,** and WOOD, Circuit
Judge.

PER CURIAM.

The plaintiff-appellants, Gus and Cather-
ine Lykos, and Mike, George, Helen, and
Marie Bousis, brought this action to recover
on an insurance policy issued by the defend-
ant-appellee, American Home Insurance
Company, for damage arising out of a fire

* This appeal was originally decided by unreport-
ed order on July 30, 1979. *See* Circuit Rule 35.
The court has subsequently decided to issue the
decision as an opinion.

** Honorable Leonard P. Moore, Senior Circuit
Judge of the United States Court of Appeals for
the Second Circuit, is sitting by designation.

on certain premises. The defendant denied liability under the policy, asserting the defenses of (1) fraud and false swearing and (2) arson by the insured. The case was given to the jury over the defendant's motion for a directed verdict, and the jury returned a verdict in favor of the plaintiffs. The trial court, however, granted the defendant's motion for judgment *non obstante veredicto* and, in accordance with Fed.R. Civ.P. 50(c)(1), conditionally granted the defendant's motion for a new trial. We need not discuss the arson evidence, even though it overwhelmingly supports the defendant and would at least require a new trial, because we hold that the evidence at trial established the plaintiff's fraud and false swearing as a matter of law.

■ The insurance policy which is the subject of this action provides:

*Concealment, fraud.* This entire policy shall be void if, whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto.

Illinois law controls the substantive law on the defense of fraud, and the governing principle is that "[o]rdinarily, fraud and false swearing is a question of fact for the jury, but it becomes a question of law when the insured's misrepresentations cannot in any way be seen as innocent." *Folk v. National Ben Franklin Insurance Co.*, 45 Ill.App.3d 595, 597, 4 Ill.Dec. 104, 105, 359 N.E.2d 1056, 1057 (1976). Illinois law also governs the appropriate standard for taking a case away from the jury. *Etling v. Sander*, 447 F.2d 593, 594 (7th Cir. 1971). The Illinois standard, as formulated in *Pedrick v. Peoria & Eastern R.R.*, 37 Ill.2d 494, 510, 229 N.E.2d 504, 513–14 (1967), is that "verdicts ought to be directed and judgments n. o. v. entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever

stand." Our examination of the record convinces us that the trial court's entry of judgment for the defendant notwithstanding the jury's verdict met this stringent test. We recount below the facts essentially as detailed in the trial court's memorandum order granting judgment n. o. v.

■ The evidence at trial showed that the plaintiffs owned a building in Hoffman Estates, Illinois, which had been newly remodeled and equipped and where the plaintiffs operated a restaurant known as Tino's Restaurant & Lounge. The establishment served both food and alcoholic beverages. The business was insured by the defendant, and the policy insured against loss by fire of the building, equipment and inventory, and against business interruption.

On March 31, 1975, the plaintiffs suffered a fire loss at Tino's. A fire started in the attic of the building causing the roof of the building to collapse. The building and much of the equipment were damaged by the fire, and the plaintiffs were no longer able to conduct business on the premises. It is uncontested that the fire was the work of arsonists. Pursuant to the terms of the insurance policy, the plaintiffs reported the loss and made a timely claim for their loss with the defendant.

The plaintiffs engaged Gale Olson, a public insurance adjuster, and agreed to pay him ten percent of any recovery. Olson had various conferences with Gus Lykos concerning the losses. Based upon his memory and observations after the fire, Lykos, together with Olson, prepared a document purporting to be a sworn proof of loss and claiming three categories of loss as a result of the fire: $167,390 for damage to the building; $188,711 for damage to the contents of the building, including food, liquor, and equipment; and $39,703 for loss of gross earnings or business interruption. The plaintiffs then submitted a sworn statement in proof of loss totaling $395,805.

The evidence showed a large number of items in the contents claim to be overvalued. In preparation of the claim neither Gus Lykos nor Olson referred to bank or other records which were recovered from

the fire by fire officials and delivered to Lykos and which would have shown the amounts paid for supplies and equipment. Neither did they consult any of the merchants, wholesalers, or other suppliers concerning purchases made by the plaintiffs before the fire. The claim included numerous items for alcoholic beverages and meats, detailing their value per bottle or per pound. The defendant subpoenaed the suppliers of those items and produced copies of invoices for the supplies. This evidence demonstrated without contradiction that in many instances the plaintiffs had paid appreciably less per bottle for beverages and less per pound for meat than the amounts claimed in their proof of loss filed under oath with the defendant. The quantities claimed were also considerably inflated. The plaintiffs included a claim for a clock which they valued at $2,200. At trial the only clock that the plaintiffs could show was damaged cost $200. The plaintiffs also included in their claim all their tables, chairs and dining room equipment. Pictures of the dining room introduced into evidence showed most of the tables and chairs intact after the fire.

The evidence also showed numerous duplications between the building and contents claims and many items overvalued. The plaintiffs contended each of the three claims included in the proof of loss was an estimate, and they did remove certain duplications. The plaintiffs, however, made no attempt to explain or justify the very substantial difference between the amount of money they claimed for losses as set forth in their claim, filed under oath with the defendant, and the actual amounts paid by them as shown from the invoices of their suppliers. The plaintiffs not only claimed a loss of $395,805 in their sworn statement in proof of loss, but later brought suit for the entire amount. It is clear from the evidence that plaintiffs submitted the claim with the intent of receiving the total amount.

We conclude, as did the trial court, that the evidence conclusively established a consistent pattern of inordinately excessive claims. After reviewing the record and giving all reasonable allowance for the possibility of innocent mistake, we are compelled to conclude that the claims were deliberately false. The misrepresentations can in no way be seen as innocent and no reasonable jury could find otherwise. *See Tenore v. American & Foreign Insurance Co.*, 256 F.2d 791 (7th Cir.), *cert. denied*, 358 U.S. 880, 79 S.Ct. 119, 3 L.Ed.2d 110 (1958).

■ The plaintiffs attempt to dismiss some of the misrepresentations as mere estimates for purposes of negotiation, and they suggest that the exaggerated claims would have been ironed out had the insurance company been willing to negotiate. They contend that the evidence, therefore, does not establish the requisite intent to defraud. Even assuming that the plaintiffs did not intend to recover more than their actual losses and merely exaggerated the extent of loss with an eye to settling, we think the proper rule is that

a design on the part of the insured to gain a position of advantage in the settlement of the loss through false representations is a fraudulent design and the making of such representations knowingly for that purpose is an attempt to defraud . . . . , even though the insured may not have expected or intended ultimately to obtain more than compensation for actual loss.

14 Couch on Insurance 2d § 49:556 (1965).

This court has previously stated that the insured, if he suffers a loss, must honestly state, under oath, the extent of his loss and give this information to the insurer. He must not make false proofs of loss with intent to defraud the insurer. Although the penalty is heavy and seemingly harsh, it is one way of stopping the presentation of false, fictitious or inflated claims. False and exaggerated claims seemingly go hand in hand with incendiarism. The court should therefore unhesitatingly act to prevent attempted frauds on the part of the insured.

*Tenore*, 256 F.2d at 794 (quoting *American Home Fire Assur. Co. v. Juneau Store Co.*, 78 F.2d 1001, 1003 (7th Cir. 1935)). The

trial court's action was in conformity with this policy. Although a jury's verdict is not to be lightly overturned, in this case the evidence at trial permitted only one result: judgment for the defendant.

AFFIRMED.